## THE FRANK T. HEFFELFINGER.

### (District Court, W. D. New York.   January 2, 1913.)

1. TOWAGE (§ 4*)—INJURY TO OTHER VESSELS—LIABILITY OF TUG.

   One of two tugs, hired to tow or maneuver a steamship, but which had not yet made fast to the ship, nor been signaled to do so, cannot be held liable for a collision occurring while the vessel was being moved by the other tug, although both belong to the same owner.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. TOWAGE (§ 11*)—COLLISION BETWEEN TOW AND ANOTHER VESSEL—LIABILITY OF TUG.

   A tug, towing a steamship out of a slip, is responsible for her movements, and liable for a collision between the ship and another vessel, which could have been avoided by care, provided the ship promptly obeyed her signals.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

3. TOWAGE (§ 11*)—COLLISION BETWEEN TOW AND ANOTHER VESSEL—LIABILITY OF TUG.

   A tug, towing a steamship from a slip on a river, held solely in fault for a collision between the ship and another vessel lying in a slip on the opposite side of the river, for want of proper care in the towing.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*

   Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty.   Suit by the United States, as owner of the lighthouse tender Crocus, against the steamer Frank T. Heffelfinger, the Peavey Steamship Company, claimant; the tugs Conneaut and W. G. Mason being impleaded.   Decree against the Conneaut.

James C. Moore, Asst. U. S. Atty., of Buffalo, N. Y.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio, for claimant.

Brown, Ely & Richards, of Buffalo, N. Y., for claimant of tugs.

HAZEL, District Judge.   The freight steamship Frank T. Heffelfinger, 450 feet over all, by 50 feet beam, struck the lighthouse tender Crocus at midnight on May 11, 1909, while the former was being assisted out of Evans slip across Buffalo river to the Philadelphia & Reading coal dock by the steam tug Conneaut.   The Evans slip is 70 feet wide and adjoins the river.   There was an approximate distance of 390 feet from the entrance thereto to the opposite bank of Buffalo river, where the Crocus was moored in the government slip with her stern projecting out about 5 feet into the river, and a distance of approximately 400 feet from the entrance to the bend in the dock on the City Ship Canal, while the distance to a point on the southwesterly side of the City Ship Canal 100 feet from the said bend, measured from a point on a line bisecting the entrance to Evans slip, is approximately 450 feet.   From an examination of such distances it is evident that a steamer of the dimensions of the Heffelfinger, leaving the Evans slip to turn down the river, must be ma-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

neuvered slowly and with considerable care and diligence. To properly make the turn, skill and sound judgment on the part of the tugs assisting her would be required; for it will be noticed that, if the steamship proceeded ahead in a straight line, her bow would reach one bank of the river while her stern still remained in Evans slip. Notwithstanding the difficulties of such navigation, steamships of the class to which the Heffelfinger belongs are daily maneuvered from Evans slip into the river in such a way as to avoid colliding with other craft or interfering with their navigation.

The evidence shows that after taking the line of the tug Conneaut, which went ahead, and after blowing an "all right" signal, the steamship did not immediately work her engines; but soon afterwards, when her pilot house was abreast the entrance to the slip, without notifying the tug, or without receiving directions to that effect, she worked her engines slowly backward, in order, as the master testified, not to increase the speed at which the Heffelfinger was being steadily pulled across the river by the tug Conneaut. When the steamship's pilot house was abreast the Watson elevator, which is located on a plot of ground dividing the river from the City Ship Canal, she backed strong; her master supposing that her stem was near the south bank. Captain Lawson, of the tug Conneaut, testified that, when the bow of the Heffelfinger was about 100 feet from the south bank, a signal to back was blown from the Conneaut, and both the master and the engineer of the steamship testified that the signal was promptly obeyed by backing full astern with the full power of her engine by putting on the pass over; but the collision nevertheless occurred. The Conneaut, after having signaled the steamship to back, ported her wheel and, heading downstream, pulled off to starboard with the intention of stopping the steamship's headway, but her efforts were unavailing; and while the tug was engaged in her endeavor to pull her around the steamship lightly struck the Crocus and damaged her.

[1] The United States, the owner of the Crocus, libeled the Heffelfinger alone; but subsequently the owner of the latter, The Peavey Steamship Company, under admiralty rule 59 (29 Sup. Ct. xlvi), brought in the tugs Conneaut and W. G. Mason. The latter was at anchor at the Anchor Line dock at the end of the slip when the collision occurred, waiting to take the astern line of the steamship to assist in making the turn. As the accident happened before the astern line was heaved, and before the customary signal to assist in making the swing was received, it is difficult to see any sound reason for attributing fault to her. She is not liable for the negligence of the ahead tug, even though both tugs belonged to the same owner. The W. G. Mason and The W. I. Babcock, 142 Fed. 913, 74 C. C. A. 83.

[2] The Heffelfinger claims that the entire fault for the collision was due to the Conneaut's negligence in pulling her too close to the opposite bank and permitting her bow to sag down, and in passing around to the starboard side of the steamship when there was danger of striking the after end of the Crocus. On the other hand, the tug Conneaut claims that, in view of the situation, it was essential that the steamship should be in control of her ahead movements when her bow

approached the middle of the river, and alleges negligence for her failure to stop her headway directly after signaled to do so.

There was testimony to the effect that prior to taking the line the master of the Conneaut notified the master of the Heffelfinger to look out for the Crocus and not to let the steamship go across into the dock. Six witnesses have sworn that such admonition was shouted to Captain Lawson, while an equal number of witnesses aboard the Heffelfinger have sworn that it was not heard or understood. In the view I take of this controversy, however, it makes no difference whether or not the attention of the Heffelfinger was called to the berth of the Crocus. An obligation rested upon the Conneaut to exercise proper skill and diligence in towing the steamship. Winslow v. Thompson, 134 Fed. 546, 67 C. C. A. 470; Rebstock et al. v. Gilchrist Transp. Co. et al. (D. C.) 132 Fed. 174.

Even with the stern of the Crocus projecting into the river, the condition of the channel, except for its narrowness, was not hazardous. The situation no doubt required the steamship to proceed with carefulness and to obey with promptness the signals of the ahead tug; but it did not require her to proceed out of Evans slip to the opposite bank, or close thereto, under her own power, or to use her rudder in any way. The pilot tug dominated her movements, and was responsible for her navigation, upon condition of her prompt obedience to the directions of the master of the tug. Even had the Heffelfinger heard the admonition shouted to her by the master of the pilot tug regarding the berth of the Crocus across the river, it is difficult to see how she could have acted more cautiously than she did by continuing to work her engines slowly backward as the tug pulled her forward. The contention that she was in fault for so doing, without receiving a signal from the pilot tug and without giving notice thereof, is without merit, and seems to ignore the uncontroverted evidence that the steamship stopped as quickly as possible upon receiving the tug's signal to do so.

[3] I am disinclined to hold the steamship in fault, and think it is fairly shown that the fault is in the Conneaut for misjudging the momentum of the Heffelfinger and failing to seasonably signal her to reverse strong or stop. She certainly lost valuable time in crossing the steamship's bow and pulling to starboard, when quick action was imperative to stop the latter's headway. She alone was in fault, and she alone must bear the damage sustained by the Crocus.

A decree may be entered accordingly, with costs.